**BRANDENBURG & BRANDENBURG v. MORONEY. (No. 7261.)**

(Court of Civil Appeals of Texas. Dallas. July 3, 1920. Rehearing Denied Oct. 16, 1920.)

Contracts ⬤ 131—Client not liable for legal services in procuring void reinstatement of lease by Department of Interior.

Attorney cannot recover for services in procuring reinstatement of lease of coal lands by Department of Interior where order of reinstatement was a nullity; the contract to procure such order being void, illegal, and contrary to public policy.

Appeal from Dallas County Court; W. F. Whitehurst, Judge.

Suit by Brandenburg & Brandenburg against W. J. Moroney. Judgment for defendant, and plaintiffs appeal. Judgment affirmed in conformity to Supreme Court's answer (221 S. W. 928) to certified questions.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellants.

W. J. Moroney and Currie McCutcheon, both of Dallas, for appellee.

HAMILTON, J. The question to be decided in this case was certified to the Supreme Court of Texas by this court. The statement of the case presented to the Supreme Court under the certificate of this court is as follows:

"Appellants sued appellee to recover of appellee $500, alleging said amount to be attorney's fees due them for services rendered in procuring the reinstatement of a lease made by the Department of the Interior to Thomas H. Chambers, who has assigned said lease to the Chambers Coal Mining Company, a corporation of McAlister, Okl., said lease covering coal lands in what was formerly the Choctaw Nation, Indian Territory.

"Appellee answered that in employing the appellants he was acting for the stockholders of the coal company when the lease had been forfeited with a view of clearing up the title to the property of the corporation and reorganizing the same; further, that at the time the lease was reinstated there had been passed by Congress a law prohibiting the making of leases for coal lands, and that the reinstating of said lease was in effect a new lease, and therefore void, and that reinstatement of the lease was of no practical value or marketable value to said coal company; that he was relying on appellants to get him a legal order of reinstatement; that they had not done so, and because thereof he was not indebted to them. Upon hearing of the evidence the court instructed a verdict for appellee, which was accordingly entered.

"In 1901 the Department of the Interior leased certain coal lands in the Choctaw Nation, Indian Territory, to Thomas H. Chambers, who assigned said lease to the Chambers Coal Mining Company, a corporation of McAlister, Okl. Said lease provided for the payment of certain royalties, and that, if the leases shall 'fail for a period of 30 days to pay the stipulated monthly royalties provided for herein, then the Secretary of the Interior shall be at liberty, in his discretion, to avoid this indenture of lease, and cause the same to be annulled, when all the rights, franchises, and privileges of the lessee shall cease and end without further proceedings.' In pursuance of said authority said lease was canceled by the said Secretary on March 12, 1912, said com-

pany having failed to pay said royalties. About this time appellee, having in view the buying up of stock of said concern and operating the coal mine leased by it, individually contracted with appellants, who were practicing attorneys in the District of Columbia, and licensed to practice before the Department of the Interior, for the purpose of getting the order canceling said lease set aside and an order reinstating said lease. For this service said appellee agreed to pay the sum of $500 on condition that the order of reinstatement was 'valid and satisfactory.' The United States Fidelity & Guaranty Company was surety on said lease for said mining company. It was understood in case of reinstatement that appellee would pay all royalties and all sums paid by the United States Fidelity & Guaranty Company within 60 days. Appellants procured from the Department of the Interior an order setting aside the order of cancellation and reinstating said lease on conditions, as shown by the following letter:

" 'Department of Interior, Washington, July 12, 1912. Office of Indian Affairs. Received Jul. 15, 1912, 70656. The Commissioner of Indian Affairs—Sir: March 12, 1912, the Department entered an order to cancel the mining lease executed by the mining trustee of the Choctaw and Chickasaw Nations in favor of Thomas H. Chambers and assigned January 26, 1904, to the Chambers Coal & Mining Company, covering certain of the segregated coal and asphalt lands in the Choctaw Nation, described as the N/2 of the NW/4, the SW/4 of the NW/4, and the NW/4 of the SW/4, Sec. 27; the NW/4 the W/2 of the NE/4, and the NE/4, and the NE/4 of the NE/4, Sec. 34, T. 5 N., R. 14 E.

" 'W. J. Moroney, claiming to represent the present stockholders of said company, one R. L. Chapman, holder of a mortgage for $10,000, and McCormick & Co., of Salt Lake City, who hold bonds of said company amounting to $60,-000, has applied for revocation of the order of cancellation. Mr. Moroney sets out that a reorganization of said company is substantially effected, and that arrangements will be made to pay up and discharge all arrearages under the lease in question if the same be reinstated and continued in force.

" 'The United States Fidelity & Guaranty Company, which heretofore made payment of $2,000 for certain delinquent royalties under said lease, have through their attorneys, Brandenburg & Brandenburg, joined in the request for revocation of said order of cancellation. You join in the recommendation of the Commissioner to the Five Civilized Tribes to the effect that Mr. Moroney be advised that the lease will be reinstated upon payment of all delinquencies and the presentation of a sufficient bond. You further recommend that the Department impose a condition that the company reimburse the United States Fidelity & Guaranty Company in the sum of $2,000 heretofore paid by it.

" 'There seems to be some doubt whether the preliminary notices or notice of the order of cancellation were given to the proper parties. These notices were addressed to one C. H. Alexander, of Dallas, Tex., but it is now asserted that he had no authority to represent the mining company, and the claim is therefore made that the order of cancellation never became effective. Without discussing this matter, it is sufficient to say that it does present some equitable considerations.

" 'Upon consideration of the circumstances surrounding this case, it is believed that it would be only just and equitable to the lessee company and its creditors and advantageous to the Indians to revoke the order of cancellation and to reinstate this lease, upon a showing that the company is not in position to actively prosecute mining operations, that it pay up all delinquencies under said lease, and furnish satisfactory security for future compliance with all the terms and conditions assumed by it under the lease.

" 'The matter of reimbursing the surety company is one resting entirely between that company and its principal, the Chambers Mining Company, and this Department will not attempt to enforce the collection of the claim of the surety company. You will advise Mr. Moroney and also Messrs. Brandenburg & Brandenburg, attorneys for the United States Fidelity & Guaranty Company, of the conclusion reached, furnishing each a copy of this letter.

" 'Respectfully,
" '[Signed] C. A. Thompson,
" ' 'Assistant Secretary.'

"For various reasons assigned by appellee for the delay he, on October 1, 1912, wired that he expected to close the matter at an early date, paying all obligations as per understanding. On October 3, 1912, appellee wrote to Mr. Wright, commissioner at Muskogee, in reference to closing the transaction, that it had been delayed for various causes, but no blame was attributed to the official of the Department. Appellee did not comply with the conditions for the reinstatement, but resisted the payment of appellants' fee on the ground, principally, that said reinstatement was invalid, for that the Department of the Interior had no authority to reinstate, the lease being forbidden by Act Cong. July 1, 1902, c. 1362, 32 Stat. 641, which reads (section 61): 'No lease of any coal or asphalt lands shall be made after the final ratifications of this agreement, the provisions of the Atoka Agreement to the contrary notwithstanding.' "

The question presented to the Supreme Court was:

"If the conditions imposed by the Secretary of the Interior for the reinstatement of said lease have been complied with by appellee, would the reinstatement thereof be valid? Or in view of the act of Congress of July 1, 1902, would the reinstatement have been unauthorized?"

To this question Chief Justice Phillips makes answer as follows (221 S. W. 928):

"The question certified by the honorable Court of Civil Appeals is whether, under the act of Congress of July 1, 1902, a reinstatement of the lease was authorized upon compliance with the conditions imposed by the Assistant Secretary of the Interior in this letter.

"The act in question was a comprehensive one, ratifying the agreement entered into be-

tween the Dawes Commission and the representatives of the Choctaw and Chickasaw Indians in relation, generally, to the lands of those tribes. It was in force at the time of the purported reinstatement of this lease, and admittedly applied to the land embraced in it. It contained the following provision: 'No lease of any coal or asphalt lands shall be made after the final ratification of this agreement, the provisions of the Atoka Agreement to the contrary notwithstanding.'

"This provision was binding upon all departments of the federal government, and plainly prohibited the making of any lease of any coal lands belonging to these two tribes of Indians. The Department of the Interior being without the power to authorize a lease of any of those lands at the time of its action with respect to this lease, it equally had no power to authorize the reinstatement of such a lease previously canceled and then of no force. In legal effect, such action was nothing less than the creation of original leasehold rights in the particular land, and therefore clearly within the interdiction of the act.

"Our investigation has disclosed no rule of federal decision contrary to this interpretation of the act. No different meaning can in our opinion be given it."

Since the Department of the Interior could not lawfully reinstate a lease which had been canceled, the action of that department in issuing the order for reinstatement of the lease of the Choctaw Nation coal lands to Chambers Coal & Mining Company was a nullity. Appellants, having induced the Interior Department to do an act which was void, illegal, and unauthorized, stand as if they had done nothing at all. The contract was void, illegal, and contrary to public policy. Accordingly no liability rests upon appellee for the payment of any fee.

The judgment is affirmed.